**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS**


**DAMIEN BRABOY,
#R-57995,**

          **Plaintiff,**

                                     **Case No. 17−cv−922−DRH**

**vs.**

**ILLINOIS DEPARTMENT OF
CORRECTIONS,
MENARD CORRECTIONAL CENTER,
JACQUELINE A. LASHBROOK,
CALEB E. ZANG,
A. MASTERSON,
SGT. SNELL,
K. ELLIS, and
C/O GRAVES,**

          **Defendants.**


<u>**MEMORANDUM AND ORDER**</u>

**HERNDON, District Judge:**

       Plaintiff Damien Braboy, an inmate in Menard Correctional Center, brings this action pursuant to 42 U.S.C. § 1983 for deprivations of his constitutional rights. In his Complaint, Plaintiff claims the defendants were deliberately indifferent to his serious medical issues, subjected him to unconstitutional conditions of confinement, violated his due process rights, interfered with his access to the courts, and retaliated against him in violation of the Eighth, Fourteenth, and First Amendments. (Doc. 1). This case is now before the Court for a preliminary review of the Complaint pursuant to 28 U.S.C. § 1915A, which

provides:

> (a) **Screening** – The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
>
> (b) **Grounds for Dismissal** – On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint–
>
>> (1) is frivolous, malicious, or fails to state a claim on which relief may be granted; or
>>
>> (2) seeks monetary relief from a defendant who is immune from such relief.

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Frivolousness is an objective standard that refers to a claim that any reasonable person would find meritless. *Lee v. Clinton,* 209 F.3d 1025, 1026-27 (7th Cir. 2000). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The claim of entitlement to relief must cross "the line between possibility and plausibility." *Id.* at 557. At this juncture, the factual allegations of the *pro se* complaint are to be liberally construed. *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

Upon careful review of the Complaint and any supporting exhibits, the Court finds it appropriate to allow this case to proceed past the threshold stage.

## **The Complaint**

In his Complaint (Doc. 1), Plaintiff makes the following allegations: on March 28, 2017, Plaintiff was passing out personal property for his job at Menard

when an inmate, Bridge, asked Plaintiff whether he was spreading rumors about his sexual orientation. (Doc. 1, p. 4). Plaintiff denied doing so, but Bridge threw a mixture of water and bleach into Plaintiff's eyes, threw coffee into his face, and began assaulting Plaintiff through the bars of his cell while Plaintiff could not see. *Id.*

Plaintiff went to the Health Care Unit ("HCU") seeking medical attention for his eyes. (Doc. 1, p. 5). He reported what happened to Defendant Graves, who was working at the HCU, but Graves disregarded Plaintiff's report, directed him to return to his job, and denied Plaintiff medical attention. *Id.* Shortly thereafter, Plaintiff was called back to the HCU to be questioned about the incident. *Id.* Plaintiff told Defendant Snell what had occurred. *Id.*

Generally, "5 gal[lery] C/Os must be present when property workers are passing out property to inmates. Before property is to be issued, the property officer must contact the gallery officer whose gallery is receiving property so that they are aware that property needs to be passed out." *Id.* Upon Plaintiff's information and belief, the "5 gal[lery] C/O was notified but was not present when plaintiff arrived" to the gallery, and Plaintiff was allowed to enter it by other C/Os, so he could perform his job duties. (Doc. 1, pp. 5-6). Plaintiff was not questioned about the presence or lack thereof of the 5 gallery C/O. (Doc. 1, p. 6). Instead, Snell became "verbally abusive toward Plaintiff stating, 'someone finally got your puss-ass, that's what you get, and if this incident goes beyond this interview I'll see to it that you never get a job in Menard again.'" *Id.* Plaintiff told Snell that he

had not done anything to be assaulted. *Id.*

Bridge later admitted to Snell that he assaulted Plaintiff. *Id.* Plaintiff believes the defendants assumed he would file a complaint highlighting the correctional officers' failure to carry out their duties, so they retaliated against him by placing him under investigation in disciplinary segregation despite this admission by Bridge. *Id.* Plaintiff believes they did this to intimidate him so that he would not file a complaint. (Doc. 1, p. 7). The offense and observation in Plaintiff's investigative report, which was written March 28, 2017 by Defendant Masterson, did not provide the offense Plaintiff was alleged to have committed and did not inform Plaintiff of the subject of the investigation. *Id.* Defendants further retaliated against Plaintiff by replacing his investigative report with a disciplinary report, written March 30, 2017 by Defendant Zang, charging Plaintiff with conspiracy, assault, and intimidation and threats on the inmate who had admitted to assaulting Plaintiff. *Id.* This was done in an attempt to intimidate Plaintiff, prevent him from filing a complaint, and justify placing him in segregation. *Id.* The adjustment committee dismissed the ticket April 4, 2017 due to insufficient information. *Id.*

Plaintiff sought redress through the grievance procedure on April 4, 2017. (Doc. 1, p. 8). He brought his grievance against Zang and Masterson for unlawful placement in segregation. *Id.* He also claimed that he feared for his safety which may have been compromised by Zang and Masterson, who employed intimidation and threat tactics on him. *Id.* Plaintiff also sought redress through the grievance

procedure for his not being allowed to return to the assignment he held prior to being removed without justifiable cause. *Id.* Plaintiff had been competent in performing his assignment, and he never requested a change from it. *Id.* Plaintiff was stripped of his assignment and never reassigned as a result of the incident on March 28, 2017 and the subsequent grievances. *Id.* "Staff recommendation for removal was more than likely the driving factor." *Id.* However, Lashbrook or the assignment officer should have done it, if at all, pursuant to Section 420.30. (Doc. 1, p. 9). Instead, Lashbrook "made the 'Administrative decision' absent compliance with Section 420.30, and . . . in bad faith." *Id.* Plaintiff was denied the opportunity to appear before the Assignment Officer as his case was being considered. *Id.* No sufficient reason or rationale was provided for Plaintiff being stripped of his assignment, but Defendant Lashbrook approved it nonetheless. *Id.*

Plaintiff was released from segregation on April 4, 2017. *Id.* April 19, 2017, "upon many oral complaints of lack of clear vision (*e.g.,* constant blurred sight, and sometimes double vision off and on) and a grievance filed April 4, 2017, in part, complaining of being denied medical attention, etc., Plaintiff wrote Defendant Lashbrook" regarding the aforementioned allegations. (Doc. 1, pp. 9-10). He did not receive a response. (Doc. 1, p. 10). Plaintiff also filed an informal complaint with the Illinois State Police. *Id.* Plaintiff also had his family contact Lashbrook regarding these incidents, but they have not gotten a response. *Id.*

Around April 19, 2017, Zang interviewed Plaintiff after having noticed the April 4, 2017 grievance Plaintiff filed against him. *Id.* Zang "was not supposed to engage in said investigation involving Plaintiff" because he was a subject of Plaintiff's complaints. *Id.* During the interview, Zang's comments toward "Plaintiff were inappropriate and a threat to [his] safety where Plaintiff was told by [Zang] that Plaintiff had [made a mistake] by filing grievances and complaints against defendant and various co-workers at Menard because a lot of inmates had/have respect for defendant and that other inmates would label Plaintiff a 'snitch,' 'stool-pigeon,' or 'informant.'" (Doc. 1, pp. 10-11). Zang threatened to have Plaintiff placed into protective custody so that he "could isolate / limit Plaintiff's movement, monitor, intervene, and/or interrupt Plaintiff's activities." (Doc. 1, p. 11). Zang threatened segregation because Plaintiff had family members call IDOC to report the incidents to John Baldwin, the acting director, and so that Plaintiff would no longer have phone privileges. *Id.*

On or about April 19, 2017, Plaintiff sent an emergency grievance to Lashbrook detailing the conduct of Zang. *Id.* Lashbrook failed to investigate Plaintiff's issues and failed to expedite his grievance. (Doc. 1, p. 12). Plaintiff filed the grievance with Counselor Niepert, per Lashbrook's response, but Niepert provided an adverse decision on May 10, 2017. *Id.* Plaintiff forwarded the grievance to the grievance officer at Menard, but he received no reply even after writing many times asking for a response. *Id.* Plaintiff eventually received a response from an unknown staff member to his final letter submitted to the

grievance officer that had the original grievance attached, stating that the grievance was received but that it was "OTF." (Doc. 1, p. 13). Plaintiff forwarded all of his documents to the Administrative Review Board ("ARB") on August 11, 2017. (Doc. 1, p. 14).

On or about April 19, 2017, Plaintiff was taken to the HCU for medical attention for his eyes. (Doc. 1, pp. 14-15). When in the HCU, while Plaintiff and the doctor were conversing about the incident that caused Plaintiff's injury, Defendant Ellis interjected, telling him there was nothing wrong with him, that he looked fine to her, and that he was "cry[ing] like a little girl because [he] got some toilet water threw in [his eyes]." (Doc. 1, p. 15). These statements were made in bad faith and with the objective to harass Plaintiff. *Id.* Plaintiff filed a grievance in which he included that, as a result of Ellis's conduct, he "felt that his life was in danger of being harmed or mistreated through receipt of any further medical and/or mental health assistance . . . and that he may be subjected to 'overt' extensive cell shakedowns (searches), or having things planted on his person" due to defendants' "nepotism and acts of cronyism." (Doc. 1, p. 16).

Lashbrook prematurely and in bad faith concurred with the administrative staff's recommendation to deny Plaintiff's April 4, 2017 grievance absent an investigation. *Id.* Her "conscious objective was to intentionally undermine Plaintiff's serious medical needs." (Doc. 1, pp. 16-17). Overwhelmed with the situation, and with defendants acting "with conscious disregard to [his] issues and needs, . . . Plaintiff has contemplated suicide and was placed on 'Crisis Watch'

from May 8, 2017 to May 10, 2017." (Doc. 1, p. 17). Plaintiff ultimately signed in to protective custody in fear of retaliatory acts by Zang and others. *Id.* "Plaintiff still feels unsafe where he is laughed at, on line-movement in PC, by defendant's co-workers who continuously pick at Plaintiff's psyche with comments such as 'look at the cry-baby Braboy in PC.'" *Id.* Plaintiff has a long history of self-harm and medication overdose, and he has recurring flashbacks due to the stress of the situations detailed in the Complaint. (Doc. 1, p. 18). Plaintiff's conditions of confinement have "an adverse psychological consequence such as self-harm, extreme paranoia, and explosive impulse disorder, where Plaintiff may become incompetent. Said conditions [have] an effect on his mental health." (Doc. 1, p. 19).

Plaintiff requests monetary damages as well as injunctive relief. (Doc. 1, pp. 37-38).

**Discussion**

Based on the allegations of the Complaint, the Court finds it convenient to divide the *pro se* action into 12 counts. The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. The designation of these counts does not constitute an opinion regarding their merit.

**Count 1 –** Graves, Masterson, Zang, Snell, and Lashbrook violated Plaintiff's First Amendment rights by placing him in solitary confinement in order to interfere with his ability to petition for redress by report, complaint, or grievance.

**Count 2 –** Snell and Lashbrook failed to protect Plaintiff from being

attacked on March 28, 2017 by another inmate when correctional officers allowed Plaintiff to enter a gallery unsupervised.

**Count 3 –** Lashbrook failed to intervene when Plaintiff was subjected to retaliation, cruel and unusual punishment, unlawful detention, harassment, and deliberate indifference to his medical needs by individual defendants.

**Count 4 –** Zang and Masterson subjected Plaintiff to unconstitutional conditions of confinement by placing him in solitary confinement in violation of the Eighth Amendment.

**Count 5 –** Ellis subjected Plaintiff to cruel and unusual punishment in violation of the Eighth Amendment when she harassed Plaintiff while he sought medical attention.

**Count 6 –** Lashbrook, Snell, Graves, Zang, and Masterson showed deliberate indifference to Plaintiff's serious medical need involving the injury he sustained to his eyes on March 28, 2017 in violation of the Eighth Amendment.

**Count 7 –** Lashbrook, Masterson, Snell, Graves, Ellis, and Zang retaliated against Plaintiff for and/or exercised prior restraint on Plaintiff to prevent Plaintiff from filing grievances and otherwise complaining about his treatment, in violation of the First Amendment.

**Count 8 –** Lashbrook, Masterson, Snell, Graves, Ellis, and Zang violated Plaintiff's due process rights under the Fourteenth Amendment by interfering with his liberty interests through their unconstitutional actions.

**Count 9 –** Illinois state law claim against Lashbrook, Masterson, Snell, Graves, Ellis, and Zang for intentionally inflicting emotional distress upon Plaintiff.

**Count 10 –** Conspiracy claim against Lashbrook, Masterson, Snell, Graves, Ellis, and Zang under 42 U.S.C. § 1985 or the common law.

**Count 11 –** Illinois state law claim against Lashbrook under a theory of *respondeat superior*.

**Count 12 –** Illinois state law claim against the Illinois Department of Corrections for indemnification.

As discussed in more detail below, Counts 3, 6, 7, 9, and 12 will be allowed to proceed past threshold. Any other intended claim that has not been recognized by the Court is considered dismissed without prejudice as inadequately pleaded under the *Twombly* pleading standard.

## Count 1 – Access to Courts

Plaintiff asserts that his First Amendment rights were violated by Graves, Masterson, Zang, Snell, and Lashbrook when he was placed in solitary confinement for the purpose of "disallowing, impeding, or interfering with Plaintiff's right to seek or petition for redress by report, complaint, or grievance." (Doc. 1, p. 20). It is unclear whether Plaintiff seeks for this claim to focus on the interference with his access to a grievance procedure at Menard or his access to the courts. Under either theory, this claim fails.

First, prison grievance procedures are not constitutionally mandated, so if Plaintiff had been denied access to the grievance procedure, this would not necessarily implicate the constitution. Though the Prison Litigation Reform Act ("PLRA") requires prisoners to exhaust all available administrative remedies before filing a suit in federal court, administrative remedies are considered to be unavailable under the PLRA when prison officials fail to respond to a prisoner's grievances. 42 U.S.C. § 1997e(a); *see also Lewis v. Washington*, 300 F.3d 829, 833 (7th Cir. 2002) (citations omitted). A plaintiff who can demonstrate the unavailability of administrative remedies is relieved from the obligation to exhaust

administrative remedies and can proceed with his or her suit. *Lewis*, 300 F.3d at 833. The Complaint therefore fails to state a First Amendment claim against any of the defendants for allegedly attempting to interfere with Plaintiff's ability to grieve by placing him in segregation. His access to the courts could not have been impeded by the alleged actions, as the unavailability of administrative remedies, as explained above, is no bar to potential litigants bringing their claims.

To the extent Plaintiff seeks to bring a more general access to courts claim, the Seventh Circuit uses a two-part test when determining whether the conduct of a prison official violates an inmate's right of access to the courts. *Lehn v. Holmes*, 364 F.3d 862, 868 (7th Cir. 2004). First, the inmate must show that prison officials failed "to assist in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." *Jenkins v. Lane,* 977 F.2d 266, 268 (7th Cir. 1992) (quoting *Bounds v. Smith*, 430 U.S. 817, 828 (1977)). Second, the inmate must be able to show "some quantum of detriment caused by the challenged conduct of state officials resulting in the interruption and/or delay of plaintiff's pending or contemplated litigation." *Alston v. DeBruyn*, 13 F.3d 1036, 1041 (7th Cir. 1994); *see also Lehn*, 364 F. 3d at 868.

A plaintiff must explain "the connection between the alleged denial of access . . . and an inability to pursue a legitimate challenge to a conviction, sentence, or prison conditions." *Ortiz v. Downey*, 561 F.3d 664, 671 (7th Cir. 2009) (internal quotation and citation omitted); *accord Guajardo Palma v. Martinson*, 622 F.3d

801, 805-06 (7th Cir. 2010). This requires Plaintiff to identify the underlying claim that was lost. *See Christopher v. Harbury*, 536 U.S. 403, 416 (2002); *Steidl v. Fermon*, 494 F.3d 623, 633 (7th Cir. 2007). Plaintiff has not identified an underlying claim that was lost due to his being briefly placed in segregation. In fact, it appears that Plaintiff is pursuing any claims that could have been lost by the alleged denial of access to the courts in the present action.

For the foregoing reasons, Count 1 is dismissed without prejudice for failure to state a claim upon which relief may be granted.

## Count 2 – Failure to Protect

In *Farmer v. Brennan*, 511 U.S. 825 (1994), the Supreme Court held that "prison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners." *Id.* at 833 (internal citations omitted); *see also Pinkston v. Madry*, 440 F.3d 879, 889 (7th Cir. 2006). However, not every harm caused by another inmate translates into constitutional liability for the corrections officers responsible for the prisoner's safety. *Farmer*, 511 U.S. at 834. In order for a plaintiff to succeed on a claim for failure to protect, he must show that he is incarcerated under conditions posing a substantial risk of serious harm, and that the defendants acted with "deliberate indifference" to that danger. *Id.*; *Pinkston*, 440 F.3d at 889. A plaintiff also must prove that prison officials were aware of a specific, impending, and substantial threat to his safety, often by showing that he complained to prison officials about a *specific* threat to his safety. *Pope v. Shafer*, 86 F.3d 90, 92 (7th Cir. 1996). "A generalized risk of violence is not enough, for

prisons are inherently dangerous places." *Wilson v. Ryker*, 451 F. App'x 588, 589 (7th Cir. 2011) (citing *Brown v. Budz*, 398 F.3d 904, 909, 913 (7th Cir. 2005); *Riccardo v. Rausch*, 375 F.3d 521, 525 (7th Cir. 2004). However, conduct that amounts to negligence or inadvertence is not enough to state a claim. *Pinkston*, 440 F.3d at 889 (discussing *Watts v. Laurent*, 774 F.2d 168, 172 (7th Cir. 1985)).

To the extent Plaintiff seeks to implicate Lashbrook and Snell for the actions of the 5 gallery C/O that neglected to accompany him on the day he was attacked, or the C/Os who broke protocol and allowed Plaintiff into the gallery without accompaniment, it is well established that "[f]or constitutional violations under § 1983 ... a government official is only liable for his or her own misconduct." *E.g.*, *Locke v. Haessig*, 788 F.3d 662, 669 (7th Cir. June 5, 2015). "This means that to recover damages against a prison official acting in a supervisory role, a § 1983 plaintiff may not rely on a theory of *respondeat superior* and must instead allege that the defendant, through his or her own conduct, has violated the Constitution." *Perez v. Fenoglio,* 792 F.3d 768, 781 (7th Cir. 2015) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009)). "An inmate's correspondence to a prison administrator may . . . establish a basis for personal liability under § 1983 where that correspondence provides sufficient knowledge of a constitutional deprivation." *Perez*, 792 F.3d at 781-82 (citing *Vance v. Peters*, 97 F.3d 987, 993 (7th Cir. 1996) ("[A] prison official's knowledge of prison conditions learned from an inmate's communications can, under some

circumstances, constitute sufficient knowledge of the conditions to require the officer to exercise his or her authority and to take the needed action to investigate and, if necessary, to rectify the offending condition.")). "In other words, prisoner requests for relief that fall on 'deaf ears' may evidence deliberate indifference." *Perez*, 792 F.3d at 782.

Plaintiff does not allege that he informed Snell and Lashbrook of any specific danger he faced prior to the date he was attacked. In fact, he does not allege that he spoke with them at all prior to the attack. He also fails to allege any facts that would imply that Lashbrook or Snell anticipated what happened to him and could have but failed to prevent it. Instead, Plaintiff alleges that a 5 gallery C/O neglected to carry out his established duties in accompanying Plaintiff while he handed out property, not that anyone, much less Lashbrook or Snell, acted with deliberate indifference to a "specific, impending, and substantial threat" to Plaintiff's safety. Count 2 will therefore be dismissed without prejudice.

### Count 3 – Failure to Intervene

Plaintiff alleges that Lashbrook failed to intervene when the other defendants subjected him to retaliation, cruel and unusual punishment, harassment, and deliberate indifference to his medical needs. Further, Plaintiff alleges that Lashbrook became aware of these alleged constitutional violations and still concurred with the denial of Plaintiff's April 4, 2017 grievance regarding some of these issues, and similarly denied emergency review of an emergency grievance filed by Plaintiff regarding the same. (Doc. 1, pp. 51, 53-54). Though

somewhat vaguely, Plaintiff alleges that some of this activity that Lashbrook could have protected him from is ongoing, including harassment he endures while on line-movements and his being in protective custody for fear of retaliatory acts of defendants, generally.

These allegations, construed liberally in favor of Plaintiff for screening purposes, are sufficient to state a claim against Lashbrook for failing to intervene in the retaliatory acts and prior restraint Plaintiff was subjected to, if nothing else. Count 3 will therefore proceed past threshold.

### Count 4 – Conditions of Confinement

Plaintiff alleges that Zang and Masterson subjected him to unconstitutional conditions of confinement by placing him in solitary confinement. An Eighth Amendment claim for unconstitutional conditions of confinement has two requirements. First, Plaintiff must demonstrate that he endured conditions that were "sufficiently serious" to constitute cruel and unusual punishment (an objective standard). This first element is satisfied when the plaintiff shows that he was "incarcerated under conditions posing a substantial risk of serious harm" to his health or safety. *Haywood v. Hathaway*, 842 F.3d 1026, 1031 (7th Cir. 2016) (citing *Sanville v. McCaughtry*, 266 F.3d 724, 733 (7th Cir. 2001)). Second, Plaintiff must show that the defendants responded with deliberate indifference to the inmate's health or safety (a subjective standard). *Farmer v. Brennan*, 511 U.S. 825 (1994). This occurs when a defendant knows of and disregards a substantial risk of serious harm to the inmate from those conditions. *Id.*

The Complaint offers no allegations suggesting that the conditions Plaintiff faced were sufficiently serious, nor that Zang or Masterson exhibited deliberate indifference toward them. Plaintiff was allegedly in segregation for no longer than seven days spanning sometime after he was assaulted March 28, 2017 to April 4, 2017. (Doc. 1, pp. 6, 9). He does not allege anything about the physical state of the cell he was in. Plaintiff does not allege that either defendant knew, generally or specifically, about any poor conditions he may have endured. No allegations suggest that Plaintiff complained to any particular defendant, either verbally or in writing, regarding his conditions in segregation during the brief time he spent there. Plaintiff claims that "[i]solated confinement invades the sphere of the intellect and the spirit [and] imposes serious injury to future health and safety," but fails to explain how or why the specific conditions he faced posed an actual risk of harm to him. (Doc. 1, p. 24). Without more, Plaintiff has failed to state an Eighth Amendment conditions of confinement claim upon which relief may be granted. Count 4 will therefore be dismissed without prejudice.

## Count 5 – Harassment

In *DeWalt v. Carter*, 224 F.3d 607 (7th Cir. 2000), the Seventh Circuit held that "simple verbal harassment," such as the use of racially derogatory language, does not, standing alone, constitute cruel and unusual punishment. *Id.* at 612 (emphasis added). *See also Dobbey v. Ill. Dep't of Corrections*, 574 F.3d 443, 446 (7th Cir. 2009) ("[H]arassment, while regrettable, is not what comes to mind when one thinks of 'cruel and unusual' punishment."); *Patton v. Przbylski*, 822 F.2d

697, 700 (7th Cir. 1987) (although unprofessional and inexcusable, racially derogatory remarks did not support a constitutional claim).

The Seventh Circuit recently revisited *DeWalt*'s holding in *Beal v. Foster*, 803 F.3d 356 (7th Cir. 2015). In Beal, the plaintiff alleged that the defendant, a sergeant, "'made verbal sexual comments directed towards inmate Brian Anthony, telling Ronald Beal to place his penis inside Brian Anthony,' and that 'on several prior occasions' [the defendant] had urinated in view of the plaintiff (by leaving the bathroom door open) and of other inmates, looking at them 'while smiling.'" *Id.* at 358. Plaintiff also claimed that other inmates were calling him derisive terms for homosexuals; conduct that may have been "inspired or encouraged" by the defendant's comments and that he "experienced severe psychological harm" as a result of the defendant's harassment. *Id.* Plaintiff's Eighth Amendment claim pertaining to the defendant's conduct was dismissed at screening.

The Appellate Court concluded that the dismissal was premature and in doing so, clarified its prior holding in *Dewalt*. The Seventh Circuit explained that "purely verbal" harassment can, under certain circumstances, amount to cruel and unusual punishment. *Id.* at 357-58. To illustrate this point, the Appellate Court discussed the following hypotheticals:

> Suppose a prisoner is having severe headaches and he complains about them to a prison doctor, who writes him a prescription for a powerful drug. A malicious guard learns of this and tells the prisoner the following lie: "the doctor didn't tell you, but he told me: you have incurable brain cancer and will be dead in three months. Now let me tell you what he told me are the symptoms you will be experiencing as your cancer worsens." Or the guard, again lying, tells another prisoner: "I am sorry to have to inform you that your wife and

children have been killed in a car crash."

*Id.* at 357. The Seventh Circuit noted that, despite being "purely verbal," the harassment in both examples was "as cruel" as cases involving "physical brutalization." *Id.* Accordingly, the Court reasoned, drawing "a categorical distinction between verbal and physical harassment is arbitrary." In other words, both physical and psychological pain can constitute cruel punishment. *Id.* at 357-58. In reaching this decision, the Court clarified that "simple," as used to describe verbal harassment in *DeWalt*, was the wrong word:

> [I]t is unclear what "simple" is intended to connote. In our hypothetical examples, the verbal harassment is "simple" in the sense of being brief, lucid, and syntactically simple. But what is simple can also, as in our two examples, be devastating. In DeWalt the plaintiff had alleged that a prison officer had "made a series of sexually suggestive and racially derogatory comments to [the plaintiff] regarding certain female teachers at the prison schools." Id. at 610. This verbal harassment was directed, to a significant degree, at the female teachers rather than at DeWalt, and second-hand harassment may be too "simple" to state a claim of cruel and unusual punishment, whereas the lies in our two hypothetical cases were aimed directly and hurtfully at the prisoner. But "simple" is the wrong word; what is meant is "fleeting," too limited to have an impact.

*Beal*, 803 F.3d at 358.

With these principles in mind, the Appellate Court concluded the dismissal of the harassment claim was premature. In reversing and remanding, the Appellate Court specifically noted that the harassment allegedly resulted in severe psychological trauma, was repetitive, was not purely verbal (urinating is not verbal), may have endangered Plaintiff because it happened in front of other

inmates, and may have carried more weight because the defendant was a sergeant.

Here, although Ellis's conduct may constitute verbal harassment, it does not come close to the type of serious harassment that is actionable in a § 1983 claim. It was not repetitive, it was purely verbal, Plaintiff does not allege that it happened in front of other inmates, and Plaintiff does not attach any particular significance to the fact that Ellis, and not another, made the alleged remarks. The fact that Plaintiff alleges that these remarks were retaliatory has some significance, but not for the purpose of this count. For these reasons, Count 5 will be dismissed without prejudice for failure to state a claim upon which relief may be granted.

### Count 6 – Deliberate Indifference to Medical Needs

State officials also violate the Eighth Amendment when they act with deliberate indifference to an inmate's serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Chatham v. Davis*, 839 F.3d 679, 684 (7th Cir. 2016). To state a claim, a plaintiff must demonstrate that he suffered from a serious medical condition (i.e., objective standard) and the state official responded with deliberate indifference (i.e., subjective standard). *Petties v. Carter*, 836 F.3d 722, 727-28 (7th Cir. 2016) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Berry v. Peterman*, 604 F.3d 435, 440 (7th Cir. 2010)). The Complaint includes allegations against the defendants that satisfy both components of this claim for screening purposes.

During the initial attack on March 28, 2017, Plaintiff had bleach water thrown into his eyes and alleges he was temporarily blinded. He also claims to have experienced blurred and double vision off and on following the incident. His injuries were serious enough that he immediately went to the HCU for treatment after he was assaulted, and was sent to the HCU again on or around April 19, 2017 for medical treatment. He alleges Graves refused to treat him the first time he went to the HCU, and that his complaints to Lashbrook, in part requesting medical care, also went unanswered for a period of time. These allegations, construed liberally in favor of Plaintiff for screening purposes, satisfy the objective and subjective components of this claim against Graves and Lashbrook. Accordingly, Count 6 shall receive further review against them. Plaintiff has not included sufficient allegations against any of the other defendants so as to implicate them for deliberate indifference to his medical needs, so Count 6 shall be dismissed without prejudice against Snell, Zang, and Masterson.

## Count 7 – Retaliation

The Complaint suggests that the verbal harassment described in Count 5 and throughout the complaint, Plaintiff's brief placement in solitary confinement, the disciplinary ticket issued against him, and the denial of his job once he was cleared of his ticket were retaliatory or otherwise aimed at preventing him from complaining about his treatment or filing grievances. Prison officials may not retaliate against inmates for filing grievances or otherwise complaining about their conditions of confinement. *See, e.g.*, *Gomez v. Randle*, 680 F.3d 859, 866 (7th

Cir. 2012); *Walker v. Thompson*, 288 F.3d 1005 (7th Cir. 2002); *DeWalt*, 224 F.3d 607; *Babcock v. White*, 102 F.3d 267 (7th Cir. 1996); *Cain v. Lane*, 857 F.2d 1139 (7th Cir. 1988). To establish a § 1983 claim of First Amendment retaliation, an inmate must allege "(1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future"; and (3) a causal connection between the two. *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009) (citation omitted).

In *Bridges v. Gilbert*, 557 F.3d 541 (7th Cir. 2009), the Seventh Circuit indicated that threatening to file a grievance or a lawsuit is not a protected First Amendment activity and thus, cannot substantiate a retaliation claim. *Id.* at 555. ("But it seems implausible that a *threat* to file a grievance would itself constitute a First Amendment-protected grievance.") (emphasis in original). Several months later, in *Fairley v. Andrews,* 578 F.3d 518 (7th Cir. 2009), the Seventh Circuit considered a related but distinguishable issue involving state actors who threaten penalties in an effort to deter future speech.

In *Fairley*, the plaintiffs (prison guards) brought a § 1983 retaliation claim alleging that they were bullied and threatened (by other guards) in order to prevent the plaintiffs from testifying in a prisoner's civil rights lawsuit. *Id.* at 524. The defendant guards argued, and the district court agreed, that the plaintiffs did not experience retaliation because the threats preceded the plaintiffs' testimony. In overturning this portion of the district court's decision, the Seventh Circuit explained as follows:

The Constitution prevents governmental actors from forbidding, or penalizing, speech that is protected under the first amendment. Penalties that follow speech are forbidden. This includes, but certainly is not limited to, reactions to what has already been said. *E.g.*, *Milwaukee Deputy Sheriff's Association v. Clarke*, 574 F.3d 370 (7th Cir. 2009); *Crue v. Aiken*, 370 F.3d 668 (7th Cir. 2004); *Ridpath v. Marshall University*, 447 F.3d 292, 319–20 (4th Cir. 2006). (Of course, the sanction or threat must be serious enough to deter an ordinary person from speaking. *Bart v. Telford*, 677 F.2d 622 (7th Cir. 1982).) But threats of penalties also are forbidden. That's why it can be misleading to speak of "retaliation" as the basis of a suit. The word implies that threats don't matter, and the district court here was misled.

Threatening penalties for future speech goes by the name "prior restraint," and a prior restraint is the quintessential first-amendment violation. *Nebraska Press Association v. Stuart*, 427 U.S. 539, 559, 96 S.Ct. 2791, 49 L.Ed.2d 683 (1976) (judicial gag order); *Southeastern Promotions, Ltd. v. Conrad*, 420 U.S. 546, 552-53, 95 S.Ct. 1239, 43 L.Ed.2d 448 (1975) (executive censorship). Indeed, for a time it appeared that prior restraints were the only actions forbidden by the first amendment. *See Schenck v. United States*, 249 U.S. 47, 39 S.Ct. 247, 63 L.Ed. 470 (1919). Later cases have held that penalties for completed speech also violate the Constitution, but this development does not suggest that only post-speech penalties now matter.

*Id.* at 525. In the instant case, at least part of Plaintiff's retaliation claim is akin to the prior restraint theory of recovery asserted by the plaintiff guards in *Fairley.* That is, Plaintiff alleges he was threatened with being removed from his job and being placed in segregation, among other things, in an effort to deter Plaintiff from filing a lawsuit or complaining about what had happened to him. Considering the Seventh Circuit's decision in *Fairley,* the Court finds that Plaintiff has stated a plausible retaliation claim that is sufficient at the screening stage against Masterson, Snell, Ellis, and Zang. The Court notes, however, that in order to maintain this claim, Plaintiff will have to meet the additional requirements

(causation and proof of damages) discussed in *Fairley.* Plaintiff has failed to state an independent retaliation claim against Graves and Lashbrook. He does not allege that Graves denied him medical care in retaliation for complaints made by Plaintiff or to restrain him from making complaints, nor does he allege Lashbrook personally acted in retaliation against him – only that he may have been aware of acts of retaliation or prior restraint and failed to intervene (which is addressed in Count 3).

Accordingly, Count 7 shall receive further review as to Masterson, Snell, Ellis, and Zang. Lashbrook and Graves will be dismissed from this count for failure to state a claim upon which relief may be granted.

### Count 8 – Due Process

The Complaint states no Fourteenth Amendment claim against the defendants for depriving Plaintiff of a protected liberty interest without due process of law. Plaintiff has alleged several scenarios in which his due process rights might have been violated, had they gone another way. For example, Plaintiff claims that Zang and Masterson wrote investigative and disciplinary reports on him that were false, in violation of his due process rights. However, in *Hanrahan v. Lane*, 747 F.2d 1137, 1140–41 (7th Cir. 1984), the Seventh Circuit held that the filing of false disciplinary charges by a correctional officer does not state a Fourteenth Amendment claim when the accused inmate is given a subsequent hearing on those charges in which the inmate is afforded the procedural protections outlined in *Wolff v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963 (1974).

The Seventh Circuit reasoned that prisoners have a right "to be free from arbitrary actions of prison officials," *Hanrahan*, 747 F.2d at 1140, but determined that the procedural protections outlined in *Wolff* provided the appropriate protection against arbitrary actions taken by a correctional officer such as issuing the inmate a fabricated conduct violation.

Plaintiff does not allege that he was denied the procedural protections outlined in *Wolff*. Instead, he notes that the charges against him were dismissed. Plaintiff has therefore not stated a due process claim against Zang and Masterson for issuing him a false ticket.

Plaintiff also claims that his placement in segregation was in violation of his due process rights. However, no due process protections are triggered by placement in segregation unless a plaintiff has a protected liberty interest in avoiding segregation. A protected liberty interest arises when confinement in segregation "impose[s] an 'atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" *Hardaway v. Meyerhoff*, 734 F.3d 740, 743 (7th Cir. 2013) (citing *Sandin v. Conner*, 515 U.S. 472, 484 (1995)). Courts generally consider two factors when making this determination: "the combined import of the duration of the segregative [*sic*] confinement and the conditions endured." *Id.* at 743 (citing *Marion v. Columbia Corr. Inst.*, 559 F.3d 693, 697-98 (7th Cir. 2009)) (emphasis in original). If the length of confinement in segregation is substantial and the conditions of confinement were unusually harsh, a liberty interest may arise. *Marion*, 559 F.3d at 697-98, n.2.

Plaintiff spent seven days or less in segregation awaiting the resolution of the allegedly false tickets issued by Zang and Masterson. The Court does not find that the length of this confinement in segregation supports a claim. Plaintiff has also provided insufficient information regarding the conditions he faced while in segregation. Plaintiff has therefore not stated a due process claim for his brief time in segregation.

To the extent Plaintiff seeks to bring a due process claim for his being removed from his job, the Court notes that the loss of a prison job does not implicate the Due Process clause. "An inmate's expectation of keeping a certain prison job does not amount to a property or liberty interest entitled to protection under the due process clause." *Gibson v. McEvers*, 631 F.2d 95, 98 (7th Cir. 1980); *accord Garza v. Miller*, 688 F.2d 480 (7th Cir. 1982) (prisoner does not have a constitutional right to rehabilitative programs or employment in prison).

Absent any other plausible suggestion that Plaintiff was deprived of a protected liberty interest without due process, the Court finds no basis for a Fourteenth Amendment due process claim against the defendants. Accordingly, Count 8 shall be dismissed without prejudice.

### <u>Count 9 – Intentional Infliction of Emotional Distress</u>

Where a district court has original jurisdiction over a civil action such as a § 1983 claim, it also has supplemental jurisdiction over related state law claims pursuant to 28 U.S.C. § 1367(a) so long as the state claims "derive from a common nucleus of operative fact" with the original federal claims. *Wisconsin v.*

*Ho-Chunk Nation*, 512 F.3d 921, 936 (7th Cir. 2008). "A loose factual connection is generally sufficient." *Houskins v. Sheahan*, 549 F.3d 480, 495 (7th Cir. 2008) (citing *Baer v. First Options of Chicago, Inc.*, 72 F.3d 1294, 1299 (7th Cir. 1995)). The Court has original jurisdiction over this action. Because the federal and state claims arise from the same facts, the district court also has supplemental jurisdiction over the related state law claims in this and the below counts.

In order to state a claim for intentional infliction of emotional distress, Plaintiff must demonstrate that the defendants intentionally or recklessly engaged in "extreme and outrageous conduct" that resulted in severe emotional distress. *Somberger v. City of Knoxville, Ill.*, 434 F.3d 1006, 1030 (7th Cir. 2006); *see Lopez v. City of Chi.*, 464 F.3d 711, 720 (7th Cir. 2006). This tort has three components: (1) the conduct involved must be truly extreme and outrageous; (2) the actor must either intend that his conduct inflict severe emotional distress, or know that there is at least a high probability that his conduct will cause severe emotional distress; and (3) the conduct must in fact cause severe emotional distress. *McGrath v. Fahey*, 533 N.E.2d 806, 809 (Ill. 1988). The defendant's conduct "must go beyond all bounds of decency and be considered intolerable in a civilized community." *Honaker v. Smith*, 256 F.3d 477, 490 (7th Cir. 2001) (citations omitted).

At this early stage, the Court finds that the allegations support a claim for intentional infliction of emotional distress against Masterson, Snell, Ellis, Graves, Lashbrook, and Zang, the defendants who were directly or indirectly involved in

the alleged various acts of retaliation, prior restraint, and/or deliberate indifference to medical needs. Regardless of her involvement, Lashbrook may also be separately liable under a theory of *respondeat superior*, as is discussed in Count 11. Count 9 shall therefore receive further review against these defendants.

### Count 10 – Conspiracy

The Court turns to Plaintiff's conspiracy claim against the defendants, which he brings pursuant to 42 U.S.C. § 1985. A § 1985 conspiracy claim "cannot exist solely between members of the same entity." *Payton v. Rush Presbyterian-St. Luke's Med. Ctr.*, 184 F.3d 623, 632 (7th Cir. 1999). All of the defendants are members of the same entity, *i.e.*, the Illinois Department of Corrections, and were working in the IDOC's interest. They cannot be sued for conspiracy under § 1985. *See id. See also Wright v. Ill. Dep't of Children and Family Servs.*, 40 F.3d 1492, 1508 (7th Cir. 1994). Accordingly, the § 1985 conspiracy claim in Count 10 shall be dismissed with prejudice for failure to state a claim upon which relief may be granted.

Civil conspiracy claims are cognizable under § 1983. *See Lewis v. Washington*, 300 F.3d 829, 831 (7th Cir. 2002) (recognizing conspiracy claim under § 1983). However, Plaintiff's conclusion that some of the defendants' actions amounted to an unlawful conspiracy is not supported by factual allegations.

Claims of conspiracy necessarily require a certain amount of factual underpinning to survive preliminary review. *See Woodruff v. Mason*, 542 F.3d

545, 551 (7th Cir. 2008) (quoting *Massey v. Johnson*, 457 F.3d 711, 716 (7th Cir. 2006)). "To establish the existence of a conspiracy, a plaintiff must demonstrate that the conspirators have an agreement to inflict injury or harm upon him." *Sow v. Fortville Police Dept.*, 636 F.3d 293, 304-05 (7th Cir. 2011). "The agreement may be inferred from circumstantial evidence, but only if there is sufficient evidence that would permit a reasonable jury to conclude that a meeting of the minds had occurred and that the parties had an understanding to achieve the conspiracy's objectives." *Id.* at 305 (quoting *Hernandez v. Joliet Police Dept.*, 197 F.3d 256, 263 (7th Cir. 1999)).

The alleged facts underpinning Plaintiff's constitutional claims herein and Plaintiff's conclusion that defendants "have conversed 'extensively'" about the March 28, 2017 incident simply because Ellis was aware of it do not establish a conspiracy. (Doc. 1, p. 15). The Complaint contains no factual support for the idea that the defendants had a meeting of the minds to harm Plaintiff, despite Plaintiff's conclusory statements that such a meeting of the minds existed. Instead, Plaintiff's claim that the defendants engaged in a conspiracy to violate his rights rests solely on his own conclusions. The conclusory statements that the defendants' "committed overt acts" and were "otherwise willful participant[s]" in a conspiracy to violate Plaintiff's rights are examples of such conclusions. (Doc. 1, p. 33). Conclusory legal statements such as Plaintiff sets forth in his Complaint are insufficient to state a claim that survives review under § 1915A. *See Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009).

For these reasons, Count 10 shall be dismissed without prejudice for failure to state a claim upon which relief may be granted.

## Count 11 – Respondeat Superior

Plaintiff seeks to assert a separate claim against Lashbrook under a theory of *respondeat superior* for the actions of the defendants underlying the other counts in this suit. The doctrine of *respondeat superior* is not applicable to Section 1983 claims. Illinois, however, recognizes the doctrine. *See Adames v. Sheahan*, 909 N.E.2d 742, 755 (Ill. 2009); *see also Doe v. City of Chicago*, 360 F.3d 667, 670 (7th Cir. 2004). Lashbrook will therefore not be dismissed from any state law claims allowed to proceed in this action based, at least in part, on Plaintiff's *respondeat superior* claim. Because the theory of *respondeat superior* will act to implicate Lashbrook in any relevant state law counts, a separate count for *respondeat superior* against Lashbrook would be superfluous. Count 11 will therefore be dismissed.

## Count 12 - Indemnification

To the extent Plaintiff seeks to enforce the State's obligation under Illinois law to indemnify its employees for any judgments entered against them, the state indemnification claim shall proceed. The Eleventh Amendment immunizes the State, its agencies, and its officials acting in their official capacities from a suit in federal court for money damages. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). *See also Wynn v. Southward*, 251 F.3d 588, 592 (7th Cir. 2001); *Billman v. Ind. Dep't of Corr.*, 56 F.3d 785, 788 (7th Cir. 1995); *Hughes v. Joliet*

*Corr. Ctr.*, 931 F.2d 425, 427 (7th Cir. 1991); *Santiago v. Lane*, 894 F.2d 219, 220 n.3 (7th Cir. 1990). However, suits against state officials in their individual capacities are permissible. *Taylor v. Wexford Health Sources, Inc.*, No. 15 C 05190, 2016 WL 3227310 (N.D. Ill. 2016) (citing *Kroll v. Bd. of Trs. of Univ. of Ill.*, 934 F.2d 904, 907 (7th Cir. 1991); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 99 (1984)). Further, the "[S]tate's decision to indemnify its employees does not transform a suit against individual defendants into a suit against the sovereign." *Id.* (citing *Benning v. Bd. of Regents of Regency Univs.*, 928 F.2d 775, 779 (7th Cir. 1991)).

Under such circumstances, the doctrine of sovereign immunity does not bar Plaintiff's claims. *Id.* (citing *Wright v. Carter*, No. 14 C 09109, 2015 WL 4978688, at *6 (N.D. Ill. Aug. 20, 2015) (refusing to find that sovereign immunity barred indemnification claim where "Plaintiff merely explain[ed] ... that the state is required by its own law to indemnify employees such as the IDOC defendants for any judgments that may be entered against them" and where it was "clear that the individual defendants will be the ones directly liable for any money judgment")). At this early stage, the indemnification claim against IDOC shall proceed.

## Additional Defendants

The Supreme Court has held that "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). *See also Wynn v. Southward*, 251 F.3d 588, 592 (7th Cir. 2001) (Eleventh Amendment bars suits against states in federal court for

money damages); *Billman v. Ind. Dep't of Corr.*, 56 F.3d 785, 788 (7th Cir. 1995) (state Department of Corrections is immune from suit by virtue of Eleventh Amendment). Menard Correctional Center, which is a division of the Illinois Department of Corrections, is therefore not a "person" within the meaning of the Civil Rights Act, and is not subject to a § 1983 suit. *See Will*, 491 U.S. at 71.

Because of this, Menard Correctional Center will be dismissed from this action with prejudice.

## Pending Motions

Plaintiff submitted an Order to Show Cause for a Preliminary Injunction that was filed in CM-ECF as a Motion for Preliminary Injunction (Doc. 5). This Motion is hereby **REFERRED** to a United States Magistrate Judge for a decision.

Plaintiff has filed a Motion to Order Facility to Give Plaintiff 6 Month Ledger Before Deadline (Doc. 4), which is hereby **DENIED** as moot. This Court received Plaintiff's trust fund account statement along with his Motion for Leave to Proceed *In Forma Pauperis* (Doc. 3), and his motion was granted on September 21, 2017. (Doc. 7).

## Disposition

**IT IS HEREBY ORDERED** that **COUNTS 1, 2, 4, 5, 8,** and **10** are **DISMISSED** without prejudice for failure to state a claim upon which relief may be granted, and **COUNT 11** is dismissed for being duplicative.

**IT IS FURTHER ORDERED** that **COUNT 3** shall **PROCEED** against **LASHBROOK, COUNT 6** shall **PROCEED** against **LASHBROOK** and **GRAVES**

and is **DISMISSED** without prejudice as against all other defendants for failure to state a claim upon which relief may be granted**, COUNT 7** shall **PROCEED** against **MASTERSON**, **SNELL**, **ELLIS**, and **ZANG** and is **DISMISSED** without prejudice for failure to state a claim upon which relief may be granted as against all other defendants, **COUNT 9** shall **PROCEED** against **MASTERSON**, **SNELL**, **ELLIS**, **ZANG, LASHBROOK**, and **GRAVES**, and **COUNT 12** shall **PROCEED** against the **ILLINOIS DEPARTMENT OF CORRECTIONS**.

 **IT IS FURTHER ORDERED** that **MENARD CORRECTIONAL CENTER** is **DISMISSED** from this action with prejudice for the reasons stated above.

 **IT IS FURTHER ORDERED** that as to **COUNTS 3**, **6**, **7**, **9**, and **12**, the Clerk of Court shall prepare for **MASTERSON**, **SNELL**, **ELLIS**, **ZANG, LASHBROOK**, **GRAVES**, and the **ILLINOIS DEPARTMENT OF CORRECTIONS**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint, and this Memorandum and Order to the defendants' place of employment as identified by Plaintiff. If one of the defendants fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that defendant, and the Court will require the defendant pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

 With respect to a defendant who no longer can be found at the work

address provided by Plaintiff, the employer shall furnish the Clerk with the defendant's current work address, or, if not known, the defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Plaintiff shall serve upon the defendants (or upon defense counsel once an appearance is entered) a copy of every pleading or other document submitted for consideration by the Court. Plaintiff shall include with the original paper to be filed a certificate stating the date on which a true and correct copy of the document was served on the defendant or counsel. Any paper received by a district judge or magistrate judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to a United States Magistrate Judge for further pre-trial proceedings. Further, this entire matter shall be **REFERRED** to a United States Magistrate Judge for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the

payment of costs under Section 1915, Plaintiff will be required to pay the full amount of the costs, despite the fact that his application to proceed *in forma pauperis* has been granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

Digitally signed by
Judge David R.
Herndon
Date: 2017.09.28
12:11:05 -05'00'

**United States District Judge**